NATALIE K. WIGHT, OSB #035576
United States Attorney
District of Oregon
**SCOTT M. KERIN, OSB #965128**
Assistant United States Attorney
Scott.Kerin@usdoj.gov
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **3:23-mj-199** |
| **v.** | **GOVERNMENT'S MOTION FOR PRETRIAL DETENTION** |
| **CRISTHIAN MARTINEZ,** | |
| **Defendant.** | |

The United States of America, through Natalie K. Wight, United States Attorney for the District of Oregon, and Scott M. Kerin, Assistant United States Attorney, hereby asks the Court to detain the defendant pending arraignment and trial.

The defendant was an armed drug trafficker responsible for manufacturing and selling fentanyl. Based upon the nature of his crimes he is both a risk of non-appearance at future court proceedings and a danger to the community and should be detained.

///

///

## A. Factual and Procedural Summary.

Defendant is currently charged in a Criminal Complaint with Manufacturing, Distributing, and Possessing with the Intent to Distribute 400 grams or more of a mixture and substance containing Fentanyl and Possession of a Firearm in Furtherance of a Drug Trafficking Crime, all in violation of Title 21, United States Code, Section 841(a)(1), 841(B)(1)(A), and 846 and Title 18, United States Code, Section 924(c). The drug charges carry a mandatory minimum sentence of 10 years' imprisonment and a maximum term of life imprisonment. The Possession of a Firearm in Furtherance of a Drug Trafficking Crime charge carries a consecutive mandatory minimum sentence of 5 years' imprisonment and a maximum term of Life imprisonment.

The defendant became the target of a federal investigation conducted by the Clackamas County Interagency Task Force (CCITF), the Westside Interagency Narcotics Task Force (WIN), the Federal Bureau of Investigation (FBI), and the U.S. Attorney's Office after he was identified as the source of fentanyl that is believed to be responsible for an apparent fatal drug overdose that occurred in September 2023. To the investigators the death appears to be the result of a fentanyl overdose but final toxicology reports are still pending.

As part of that investigation, investigators obtained a warrant to track the defendant's cellphone. In the early hours of November 16, 2023, investigators began to receive geolocation notifications from the defendant's cellphones showing both phones were moving north from California and into the state of Oregon. After noticing the geolocation data indicated that the phones were coming north into Oregon, investigators began to travel south to catch up with the phones and attempt to find the defendant and his blue BMW. Investigators shortly thereafter were able to locate a blue BMW and positively identified it as the target blue BMW.

///

Investigators followed the vehicle and conducted a traffic stop of the blue BMW in the area of Gladstone, Oregon, just outside of Portland, Oregon. The driver was identified as the defendant. During a K-9 sweep of the blue BMW, Washington County Deputy utilizing a drug detection K-9 received a positive alert for the presence of narcotics within the vehicle. The vehicle was searched and investigators found multiple packages hidden behind the radio console wrapped in duct tape. Investigators opened the packages and discovered a white substance in brick form within them. A field test conducted of these narcotics tested positive for fentanyl, as Schedule II controlled substance. Below are photos of the packages of compressed white powder seized at the traffic stop. The three packages found behind the radio console weighed approximately 812.5 grams: A fourth package of fentanyl found underneath the carpet in the trunk weighed approximately 189 grams.



///

///

///



Following this discovery, the defendant was read his *Miranda* rights and he agreed to talk to investigators. After being briefed about the investigation, defendant told investigators that he was staying at the apartment in Gladstone (the Target Location) that was known to investigators.

Upon receiving consent for a search from the defendant, investigators traveled to the Target Location and completed a clear of the residence where they entered the residence and walked through it to make sure it was safe. During the entry, investigators observed in plain view various instrumentalities consistent with drug trafficking and manufacturing. Following this discovery, investigators maintained the scene while a federal search warrant was completed and signed.

On November 16, 2023, United States Magistrate Judge Jeffery Armistead, signed a court order in the District of Oregon, authorizing the search of the Target Location, known as the residence belonging to defendant. During the search of the residence, investigators discovered a fentanyl manufacturing and distribution operation, as well as multiple firearms. Items discovered included:

///

///

- a 20 Ton Shop Hydraulic Press, which investigators know is used to press (produce and manufacture) bricks of fentanyl powder for purposes of further distribution;
- Blenders, gas masks and baking trays with a white residue, which investigators know are used in to mix, produce, prepare, process, and manufacture fentanyl for purposes of further distribution;
- Approximately 5 ounces of white powder, which investigators believe is additional fentanyl powder, and M30 fentanyl pills;
- Containers of Mannitol, which investigators know is used to mix with fentanyl as a “cutting agent” to prepare, process, and increase the bulk of the mixture and substance containing fentanyl for purposes of further distribution;
- Thousands of dollars in loose U.S. currency
- Approximately 29 boxes of various caliber ammunition;
- Ten (10) handguns; and,
- An AR-15 .22 caliber rifle.

Below are photos of items discovered during the search:

///

///

///







Based upon the nature of the charges the government seeks the defendant's detention as a danger to the community and a risk of nonappearance.

**B. Applicable Law.**

**1. Rules of Evidence Do Not Apply at Detention Hearing**

The Federal Rules of Evidence do not apply in pretrial detention proceedings. Fed. R. Evid. 1101(d)(3); 18 U.S.C. § 3142(f). Accordingly, both the government and the defense may present evidence by proffer or hearsay. *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986); *see also United States v. Bibbs*, 488 F.Supp.2d 925, 925-26 (N.D.Cal. 2007).

**2. Rebuttable Presumption of Detention**

Under the Bail Reform Act, 18 U.S.C. § 3142, *et seq.*, which governs the detention of a defendant pending trial, the Court shall order a defendant detained if, after a hearing, it finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." Generally, the United States bears the burden of establishing danger to the community by clear and convincing evidence; risk of flight need only be proved by a preponderance of the evidence. *United States v. Aitken*, 898 F.2d 104, 107 (9th Cir. 1990); *Winsor*, 785 F.2d at 757.

Where there is probable cause to believe that the defendant committed a Title 21 narcotics offense and the maximum penalty for that offense is a term of imprisonment of 10 years or more, or a violation of Title 18, United States Code, Section 924(c), the law creates a presumption that no condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(3)(A) and (B). In such a case, the burden of proof shifts to the defendant to rebut the

///

presumption of detention. *United States v. Carbone*, 793 F.2d 559, 560 (3rd Cir. 1986). The criminal charges in this case create a presumption of pretrial detention.

Concern about the safety of the community is not limited to concerns about violence; rather it is the *risk* that a defendant will continue committing crimes while on release, such as drug dealing, that warrants their continued detention as a danger to the community:

> [T]he language referring to the safety of the community refers to the danger that the defendant **might** engage in criminal activity to the detriment of the community. The committee intends that the concerns about safety be given a broader construction than merely danger of harm involving physical violence. This principal was recently endorsed in *United States v. Provenzano and Andretta*, in which it was held that the concept of 'danger' . . . extended to nonphysical harms such as corrupting a union. **The committee also emphasizes that the risk that a defendant will continue to engage in drug trafficking constitutes a danger to the "safety of any other person or the community."**

S.REP. NO. 98-225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N 3182, 3195 (Bail Reform Act)(emphasis added); *see also United States v. Hare*, 873 F.2d 796, 798-99 (5th Cir.1989)(Congress has determined "that drug offenders pose a special risk of flight and dangerousness to society.").

The Senate Report further explained *why* they created the presumption that there was no condition or combination of conditions of release that will reasonably assure the appearance of drug dealers or the safety of the community:

> These [the crimes outlined in 18 U.S.C. § 3142(e)] are serious and dangerous federal offenses. The drug offenses involve either trafficking in opiates or narcotic drugs, or trafficking in large amounts of other types of controlled substances. It is well known that drug trafficking is carried on to an unusual degree by persons engaged in continuing patterns of criminal activity. Persons charged with major drug felonies are often in the business of importing or distributing dangerous drugs, and thus, **because of the nature of the criminal activity with which they are charged, they pose a significant risk of pretrial recidivism**.

S.REP. NO. 98-225, 98th Cong., 1st Sess. (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3203 (Bail Reform Act) (emphasis added).

The presumption in favor of detention, as both a flight risk and danger to the community, does not vanish if a defendant comes forward with some evidence to rebut it, but rather it remains an evidentiary factor to be evaluated. *United States v. Jessup*, 757 F.2d 378, 384 (1st Cir.1985); *see also United States v. Rueben*, 974 F.2d 580, 586 (5th Cir.1992); *United States v. Rodriguez*, 950 F.2d 85, 88 (2nd Cir.1991); *United States v. Hare*, 873 F.2d 796, 798 (5th Cir.1989). Were the presumption to vanish, "courts would be giving too little deference to Congress' findings regarding this class." *United States v. Martir*, 782 F.2d 1141, 1144 (2nd Cir.1986).

The degree of danger posed by a defendant charged with narcotics trafficking is critical. *United States v. Leon*, 766 F.2d 77, 81 (2nd Cir. 1985). To determine that degree and decide if a defendant should be detained pending trial, a judicial officer must look to the nature and circumstances of the crime charged; whether the crime involved violence or drugs; the personal history of the person, the seriousness of the danger posed by the person's release; and, the evidence of the individual's guilt. *Id*. Evidence of defendant's family ties in the area, residence in the community and employment history should have no bearing on the court's determination of dangerousness and cannot rebut the presumption that arises under the statute. *See* S. Rep. No. 225, 98th Cong., 1st Sess. 24 (1983) (minimizing community ties and pointing to the "growing evidence that the presence of this factor does not necessarily reflect a likelihood of appearance, and has no correlation with the question of the safety of the community.").

If the defendant proffers evidence to initially rebut the presumption of dangerousness or risk of non-appearance, the Court should then examine the following four factors in deciding whether release is appropriate:

(1) the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a controlled substance . . . ;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including –

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearances at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal . . . ; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g).

**C. Factors Supporting Detention.**

The defendant should be detained pending trial as both a danger to the community and a risk of nonappearance. The defendant is an armed drug dealer who is directly linked to an apparent fatal fentanyl overdose. His criminal history demonstrates that he is a danger to the community and a risk of nonappearance and he should be detained pending trial.

**1. Nature and Circumstances of the Offense.**

The defendant was an armed fentanyl manufacturer and dealer. Drug dealing is destructive to the community and fentanyl, in particular, is resulting in an overwhelming number of overdoses within the community. Drug dealers like the defendant are exactly the people Congress warned us about and why they created the presumption of detention in these cases. Drug dealers historically make their living from selling drugs and are prone to go back to it when they are released from custody. That high risk of pretrial recidivism warrants the defendant's continued pretrial detention.

**2. Weight of the Evidence.**

The weight of the evidence against the defendant is extremely strong and supports his continued detention. The proof against the defendant is outlined in the criminal complaint that was filed in this case. The defendant has been linked to an apparent overdose death, he has a long history of dealing fentanyl, and he was caught with substantial quantities of fentanyl and firearms. The case against the defendant is strong and he should be detained.

**3. History and Characteristics of the Defendant.**

The history and characteristics of the defendant also warrants his pretrial detention. The defendant was an active and armed drug dealer linked to an apparent fatal fentanyl overdose. It has been reported that he was involved in shooting another individual while he was dealing fentanyl in downtown Portland, Oregon. He is a citizen of Honduras and illegally in the country. He should be detained.

**4. Nature and Seriousness of the Danger to the Community.**

The defendant's drug dealing activities, by themselves, are extremely serious. Given the presumption of detention that comes along with the charges, Congress has recognized the very serious risk that drug dealers like the defendant pose to the community and his risk of going back to drug dealing even while on pretrial release. There is simply no condition or combination of conditions that the Court will impose that will mitigate the risk that the defendant will go back to distributing drugs within the community. The defendant should be detained.

## Conclusion

For the reasons set forth herein, we respectfully request that the Court continue to detain the defendant pending his arraignment and trial and find he poses an unacceptable risk of non-appearance at future court hearings and is a danger to the community.

We ask the Court to find that:

- The charged offenses create a rebuttable presumption in 18 U.S.C. § 3142(e) that no combination of conditions will (1) reasonable assure the safety of the community and (2) reasonably assure the appearance of the defendant as required.

- The defendant has not rebutted, by sufficient evidence to the contrary, the presumption of detention provided in 18 U.S.C. 3142(e).

- Furthermore, due to the nature of the offenses and the extreme dangers posed by the defendant's drug trafficking and possession of firearms in furtherance of his drug dealing, there is no condition or combination of conditions that will reasonably assure the safety of other persons and the community if the defendant were released.

- Due to the weight of the evidence and the defendant's personal history and characteristics, including the potential penalties he is facing on the current charges, no condition or combination of conditions will reasonably assure the appearance of the defendant at future court hearings as required if released from custody.

Based upon the above findings, the defendant should be detained pending trial.

Dated: November 20, 2023.

Respectfully submitted,

NATALIE K. WIGHT
United States Attorney

/s/ Scott Kerin

SCOTT M. KERIN, OSB # 965128
Assistant United States Attorney